## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|   |   |   |
|---|---|---|
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| | : | |
| **v.** | : | **Case No. 07-mc-427 (PLF)** |
| | : | |
| **MICHAEL C. IRVING** | : | **Judge Paul F. Friedman** |

_____:

### JOINT STATUS REPORT

The District of Columbia, by and through counsel, jointly with counsel for the defendant, David Dickieson, hereby submit this joint status report in response to the Court's order on February 19, 2008.

This matter is before the Court following a Status hearing held on February 19, 2008. At this status hearing, the Court discussed the remaining outstanding discovery issues as it pertained to the records requested by defendant from the District of Columbia. The parties agreed that all discovery matters had been resolved except for one issue. The Court ordered the parties to continue discussions to resolve the remaining issue and to file a joint status report with the Court no later than 10 days.

Pursuant to this Court's order, the parties have discussed the remaining outstanding discovery issue and submit the following report.

**A.  (1) Whether the D.C. Pay and Retirement Services can produce a computer printout listing every full-time employee of the MPD from 2000 to present who had zero federal taxes withheld at the end of each year; (2) whether the information must be produced under a Rule 17(c) subpoena; and (3) whether the information is material to the defense?**

**Government:**

(1)  The Office of Pay and Retirement Services can generate a computer printout of all MPD

   employees that had zero taxes withheld at the end of each tax year from the payroll

system.  However, this information is not readily available.  According to the IT support technicians of the Office of Pay and Retirement, first a computer program must be written to extract the needed information from the system.  Then a series of test must be performed to ensure that the program is properly extracting the needed information from the system.  This process alone can take at least 2 weeks. Because this information is not in a format that would make this information already in the possession of the District, it would be outside the scope of any discovery request to require the District to write a program that would produce such a document since the District would be creating a document that does not already exist.  Discovery is for information that already exists. The District, therefore, asks this Court to hold that the District has sufficiently complied with the subpoena issued by defendant with respect to the named individuals.

(2)  Rule 17 (c) permits the Court to order issuance of a subpoena for books, papers documents or objects to be produced.  In *United States v. Nixon*, 418 U.S. 683,697-702 (1974), the Court established a four-part test for enforcement of such subpoenas.  The defendant here must show (a) that the documents are evidentiary and relevant; (b) that they are not otherwise procurable in advance of trial; (c) that they are necessary to the party's trial preparation; and (d) that the subpoena is issued in good faith and not part of a general fishing expedition.

In this case, defendant is requesting the government to create a computer program extracting information from it's personnel database to provide a listing of persons that had zero federal taxes withheld at year-end for 2000 to present.  This is not information that is readily available and, as stated *supra*, pt. 1, it has to be created, tested and then generated for production.  There is no indication that the computer printout will show that a person that had zero taxes withheld was actually because the person filed "exempt

2

status".  A more detailed search of the individual payroll files would have to be searched, which again is an undue burden to place on the District.  Moreover, the request made here by defendant is part of a fishing expedition and is exactly what *Nixon* expressly stated that is not permitted.  The defendant originally submitted requests for five named individuals.  The District complied with that request pursuant to the hearing before Magistrate Judge Robinson and a protective order issued by the Court on February 6, 2008.  After that hearing, the court allowed the defendant to submit additional names of persons the defendant had knowledge of that also filed exempt status.  Defendant submitted two additional names.  However, the additional submitted names were shown to **not** have filed exempt status during the years 2000 to the present.  Again, unless there is a good faith belief, the District should not be compelled to perform a fishing expedition on behalf of the defendant and search out other individuals who may or may not have filed exempt status during the years 2000 to present.  The District would respectfully request that the Court find that the computer printout is beyond the scope of Rule 17 (c) and not order production of said computer printout by the District.

(3) At the status hearing before Magistrate Judge Robinson on February 5, 2008, Judge Robinson stated at the beginning of the hearing that she would not make any findings as to relevancy or materiality of the information requested.  She would leave that decision to this Court.  The computer printouts that defendant is requesting is not material to the defense in this case.  Even if the defendant can show that other MPD employees filed "exempt status" during the year, he cannot show that they failed to pay federal or state income taxes for that year.  Asking the government to create documents for production is outside the scope of what is to be produced under Rule 17 (c), and the defendant has failed to show how this information requested is material to his defense, other than

3

stating that because other individuals may have filed exempt status, it was okay for him to do so as well, and therefore, he committed no wrong doing.  The District disagrees with this assertion and asks this Court to find that asking the District to blindly comb its records for names of other individuals, without a good faith belief of who those individuals are, is in fact a fishing expedition and is not material to the defense.

**Defendant:**

The Court requested a status report from the parties within 10 days of the hearing on the motion to quash the subpoenas.  The parties were asked to address the Court's question whether the District of Columbia had the ability to search their computer database to identify those MPD employees who were showing no income tax withholding for an entire year.  The District of Columbia attorney notified the Court at the February 19 hearing that such a database search ***could not be done***.  Counsel for the Defendant asked for the opportunity to have his own database expert meet with the District of Columbia database experts to determine whether a practical solution could be found.  The Court encouraged collaboration and asked the parties to report back on their progress within 10 days.

The District of Columbia did not agree to meet with Defendant's database expert, but instead now reports that it is possible to search the payroll database and identify those persons who had no income tax withholding for an entire year.  According to the DC attorney, the same IT technicians employed by the District of Columbia who previously were reported to assert that such a database search was not possible, now claim that such a database search is possible, but the search would take at least two weeks.  This new estimate was provided without any assistance from any outside database experts – as offered by the Defendant.  If the DC Government had simply undertaken to do the database search instead of blindly opposing the

4

request, the search would have been completed and the legal efforts over the past two months would have been avoided.

The District of Columbia attorney's status report includes not only the admission that the database search is possible, but also seeks to include in this status report arguments with respect to the substance of the information sought in the subpoena. Defendant's counsel does not believe that a status report is well-suited to advance an argument on the merits, but Defendant cannot let the DC attorney's arguments stand without some limited rebuttal:

Rather than acknowledge to this Court that the DC IT technicians are providing inconsistent estimates, are unwilling to seek outside advice, and their credibility may be impaired, the DC Government argues that the database search results would be irrelevant and immaterial to the defense of Michael Irving. These are issues that the Magistrate Judge specifically declined to consider in ruling on the subpoenas.

Moreover, the District of Columbia attorney is not entirely familiar with the facts and circumstances of the case against Mr. Irving and his defenses. In fact, not only are the requested documents very relevant to his defenses, but the District of Columbia's responses and resistance to these subpoenas continue to provide relevant information that Defendant's counsel will use at trial. The gist of the litigation is whether Defendant Irving had the requisite criminal intent when he fully disclosed to the District of Columbia that he believed he was "exempt" from taxes. Mr. Irving will testify that he believed that his D-4 and W-4 filings were accepted and approved by the MPD payroll department, leading him to believe that his actions could not be criminal. As a result of the District of Columbia's responses to the subpoenas, it is now clear that not only did the MPD payroll department accept the D-4 and W-4 filings, but also the DC Office of Pay and Retirement Services (the experts on payroll issues) also accepted the filings. Detective Irving could read on the D-4 form the notice that if his employer (the DC Government) believed that

the D-4 form contained any false information the D-4 was to be sent to the DC Office of Tax and Revenue. Detective Irving's D-4 forms were never sent to the Office of Tax and Revenue, as the DC Office of Tax and Revenue has not produced a single copy of any D-4 form that was sent to the DC Office of Tax and Revenue, despite the fact that several people filed D-4 forms claiming to be "exempt" from taxes.

The IRS and the DC Department of Tax and Revenue claim that Detective Irving committed a very serious crime when he filed a D-4 stating that he was "exempt" from taxes, regardless of whether he later filed a valid tax return. The Government wants to take away Detective Irving's liberty because he claimed he was "exempt" from taxes. The District of Columbia's position is that two weeks of investigation into its own files is too burdensome to find other persons who the IRS and the Department of Tax and Revenue would also assert committed serious crimes. Knowing who these other persons are would aid Detective Irving in questioning the tax return preparer Steven Harris about the scope of his activities and how he was able to persuade so many people in law enforcement to take his advice about taxes. The additional payroll records would provide relevant names of other witnesses for the defense who could testify about their own non-criminal motivations in claiming that they were exempt and provide corroboration of Detective Irving's testimony. The Constitutional issues of due process and equal protection provide sound reasons for allowing Detective Irving to see how pervasive the claim of exemption was within the MPD.

The District of Columbia also argues that the subpoena is requesting documents that do not exist. That is not true. The subpoena requests the payroll records that are already in existence of MPD employees who claimed they were exempt from taxes. The DC Government claimed that they could not find those employees in their files. Now, the DC Government claims that it can find those employees without a hand search of every file. The database search will

merely identify the few files that have to be hand searched.  The burden of hand searching the

few payroll files of persons identified by the database search is *de minimus*.

The Defendant, therefore, requests that the subpoena be enforced.


Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
Phillip A. Lattimore, III [422678]
Chief, General Litigation Sec. III


_____/s/_____
KERSLYN D. FEATHERSTONE [478758]
Assistant Attorney General
Sixth Floor South
441 4th Street, N.W., Suite 600
Washington, D.C. 20001
(202) 724-6600 (office)
(202) 727-3625 (fax)
E-Mail: Kerslyn.Featherstone@dc.gov


_____/s/_____
David Schertler, Esq. [367203]
David H. Dickieson, Esq. [321778]
**Schertler & Onorato, L.L.P.**
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC  20004
Phone: (202) 628-4199
Fax:  (202) 628-4177

*Counsel for Michael C. Irving*